File Date: _____

Case No: _____

ATTACHMENT # _____

EXHIBIT _____

TAB (DESCRIPTION) _____

User Guidance

www.finra.org/brokercheck

©2007 FINRA. All rights reserved.    Report# 18307-11995 generated on Monday, November 19, 2007 about DONNA J. MACDONALD





# BrokerCheck Report
## CARL R KUNZ
CRD# 4207522

Report #60183-22352 generated on Monday, November 19, 2007.

| Section Title | Page(s) |
| --- | --- |
| Report Summary | 1 |
| Broker Qualifications | 2 - 3 |
| Registration and Employment History | 4 |
| About this BrokerCheck Report | 5 |

# FINГa

## Dear Investor:

FINRA has generated the following BrokerCheck report for CARL R. KUNZ. The information contained within this report has been provided by a FINRA brokerage firm(s) and securities regulators as part of the securities industry's registration and licensing process and represents the most current information reported to the Central Registration Depository (CRD®).

FINRA regulates the securities markets for the ultimate benefit and protection of the investor. FINRA believes the general public should have access to information that will help them determine whether to conduct, or continue to conduct, business with a FINRA member. To that end, FINRA has adopted a public disclosure policy to make certain types of information available to you. Examples of information FINRA provides include:

- Regulatory actions, investment-related civil suits,
- Customer disputes that contain allegations of sales practice violations against brokers, all felony charges and convictions, misdemeanor charges and convictions relating to securities violations, and
- Financial events such as bankruptcies, compromises with creditors, judgments, and liens.

When evaluating this report, please keep in mind that it may include items that involve pending actions or allegations that may be contested and have not been resolved or proven. Such items may, in the end, be withdrawn or dismissed, or resolved in favor of the individual broker, or concluded through a negotiated settlement with no admission or finding of wrongdoing.

The information in this report is not the only resource you should consult. FINRA recommends that you learn as much as possible about the individual broker or firm from other sources, such as professional references, local consumer and investment groups, or friends and family members who already have established investment business relationships.

FINRA BrokerCheck is governed by federal law, Securities and Exchange Commission (SEC) regulations and FINRA rules approved by the SEC. State disclosure programs are governed by state law, and may provide additional information on brokers licensed by the state. Therefore, you should also consider requesting information from your state securities regulator. Refer to www.nasaa.org for a complete list of state securities regulators.

Thank you for using FINRA BrokerCheck.



Using this site/information means that you accept the FINRA BrokerCheck Terms and Conditions. A complete list of Terms and Conditions can be found at
brokercheck.finra.org



For additional information about the contents of this report, please refer to the User Guidance or www.finra.org/brokercheck. It provides a glossary of terms and a list of frequently asked questions, as well as additional resources. For more information about FINRA, visit www.finra.org.

www.finra.org/brokercheck

User Guidance



**FINra**

## Report Summary for this Broker

The report summary provides an overview of the broker's professional background and conduct. The individual broker, a FINRA-registered firm(s), and/or securities regulator(s) have provided the information contained in this report as part of the securities industry's registration and licensing process. The information contained in this report was last updated by either the broker, a previous employing brokerage firm, or a securities regulator on 01/30/2007.

## Broker Qualifications

This broker is registered with:

- 1 Self-Regulatory Organization
- 2 U.S. states and territories

This broker has passed:

- 4 Principal/Supervisory Exams
- 0 General Industry/Product Exams
- 1 State Securities Law Exam

## Registration and Employment History

This broker was previously registered with the following FINRA firms:

**DAVID A. NOYES & COMPANY**
CRD# 205
06/2004 - 01/2007

**HOWE BARNES HOEFER & ARNETT, INC.**
CRD# 2240
CHICAGO, IL
07/2000 - 05/2004

For additional registration and employment history details as reported by the broker, refer to the Registration and Employment History section of this report.

## Disclosure of Customer Disputes, Disciplinary, and Regulatory Events

This section includes details regarding disclosure events reported by or about this broker to CRD as part of the securities industry registration and licensing process. Examples of such disclosure events include formal investigations and disciplinary actions initiated by regulators, customer disputes, certain criminal charges and/or convictions, as well as financial disclosures, such as bankruptcies and unpaid judgments or liens.

**Are there events disclosed about this broker? No**



**CARL R. KUNZ**

**Currently employed by and registered with the following FINRA Firms:**

**OPTIONSHOUSE, INC.**
303 E. WACKER DRIVE
SUITE 700
CHICAGO, IL 60601
CRD# 135625
Registered with this firm since: 01/2007

www.finra.org/brokercheck

User Guidance

**FINra**

# Broker Qualifications

## Registrations

This section provides the SROs, states and U.S. territories the broker is currently registered and licensed with, the category of each registration, and the date on which the registration status became effective. This section also provides information on the physical location of each branch that the broker is associated with, for each listed employment.

**This individual is currently registered with 1 SRO and is licensed in 2 U.S. states and territories through his or her employer.**

## Employment 1 of 1

Firm Name:            OPTIONSHOUSE, INC.
Main Office Address:  303 E. WACKER DRIVE
                      SUITE 700
                      CHICAGO, IL  60601

Firm CRD#:            135625

| SRO | Category | Status | Date |
|-----|----------|--------|------|
| NASD | | APPROVED | 01/30/2007 |
| | General Securities Representative | APPROVED | 01/30/2007 |
| NASD | | APPROVED | 01/30/2007 |
| | Registered Options Principal | APPROVED | 01/31/2007 |

| U.S. State/ Territory | Category | Status | Date |
|-----|----------|--------|------|
| | | APPROVED | 01/30/2007 |
| Illinois | Agent | APPROVED | 01/30/2007 |

## Branch Office Locations

This individual does not have any registered Branch Office where the individual is located.

©2007 FINRA. All rights reserved.    Report# 60183-22352 generated on Monday, November 19, 2007 about CARL R. KUNZ

User Guidance



# Broker Qualifications

## Industry Exams this Broker has Passed

This section includes all current principal/supervisory, general product/industry, and/or state securities law exams that the broker has passed. Under certain, limited circumstances, a broker may receive a waiver of an exam requirement based on a combination of previous exams passed and qualifying work experience. Likewise, a new exam requirement may be grandfathered based on a broker's specific qualifying work experience. Information regarding instances of exam waivers or the grandfathering of an exam requirement are not included as part of the BrokerCheck report.

**This individual has passed 4 principal/supervisory exams, 0 general industry/product exams, and 1 state securities law exam.**

## Principal/Supervisory Exams

| Exam | Category | Date |
|------|----------|------|
| | | |
| General Securities Sales Supervisor - Options Module Examination | Series 9 | 08/23/2000 |
| | | |
| NYSE Compliance Officer Examination | Series 14 | 02/09/2001 |

## General Industry/Product Exams

| Exam | Category | Date |
|------|----------|------|
| | | |

## State Securities Law Exams

| Exam | Category | Date |
|------|----------|------|
| | | |

Additional information about the securities industry's qualifications and continuing education requirements, as well as the examinations administered by FINRA to brokers and other securities professionals can be found at http://www.finra.org/brokerqualifications/.

www.finra.org/brokercheck

©2007 FINRA. All rights reserved.    Report# 60183-22352 generated on Monday, November 19, 2007 about CARL R. KUNZ



www.finra.org/brokercheck

User Guidance

FINRA

# Registration and Employment History

## Previously Registered with the Following FINRA Firms

FINRA records show this broker previously held FINRA registrations with the following firms:

| Registration Dates | Firm Name | CRD# | Branch Location |
|---|---|---|---|
| 06/2004 - 01/2007 | DA DAVIDSON & COMPANY | 205 | |
| 07/2000 - 05/2004 | HOWE BARNES HOEFER & ARNETT, INC. | 2240 | CHICAGO, IL |

## Employment History

This section provides up to 10 years of a broker's employment history as reported by the individual broker, and includes all securities and non-securities related employment, full and part-time work, self-employment, military service, unemployment, and full-time education. Please note that this information is not updated after an individual ceases to be registered with a FINRA firm.

| Employment Dates | Employer Name | Employer Location |
|---|---|---|
| 06/2004 - 01/2007 | DAVIDSON & CO | CHICAGO, IL |
| | | CHICAGO, IL |
| 05/2000 - 04/2004 | HOWE BARNES INVESTMENTS, INC. | CHICAGO, IL |
| | EDUCATION | CHICAGO, IL |

## Affiliations

This section includes information, if any, as provided by the broker regarding other business activities the broker is currently engaged in either as a proprietor, partner, officer, director, employee, trustee, agent or otherwise. This section does not include non-investment related activity that is exclusively charitable, civic, religious or fraternal and is recognized as tax exempt.

No information reported.

©2007 FINRA. All rights reserved.    Report# 60183-22352 generated on Monday, November 19, 2007 about CARL R. KUNZ



www.finra.org/brokercheck

User Guidance

## About this BrokerCheck Report

BrokerCheck reports are part of a FINRA initiative to disclose information about FINRA-registered firms and brokers to help investors determine whether to conduct, or continue to conduct, business with these firms and brokers. The information contained within these reports is collected through the securities industry's registration and licensing process.

### Who provides the information in BrokerCheck?

Information made available through FINRA BrokerCheck is derived from the Central Registration Depository (CRD®) as reported on the industry registration and licensing forms brokerage firms and brokers are required to complete.

The forms used by brokerage firms, Forms BD and BDW, are established by the Securities and Exchange Commission (SEC) and adopted by all state securities regulators and self-regulatory organizations (SROs). FINRA and the North American Securities Administrators Association (NASAA) establish the Forms U4 and U5, the forms that collect broker information. Regulators provide information via Form U6, which is used primarily to report certain history about brokerage firms and brokers. These forms are approved by the SEC.

### How current is the information contained in BrokerCheck?

Brokerage firms and brokers are required to keep this information accurate and up-to-date (updates typically are required not later than 30 days after the broker/brokerage firm learns of an event). The report data is updated when a firm, broker, or regulator submits new or revised information to CRD. Generally, updated information is available on BrokerCheck Monday through Friday.

### What information is NOT disclosed through BrokerCheck?

Information that has not been reported to the CRD system, or that is not required to be reported, is not disclosed through FINRA BrokerCheck. Examples of events that are not required to be reported or are no longer reportable include: judgments and liens originally reported as pending that subsequently have been satisfied and bankruptcy proceedings filed more than 10 years ago. Conversely, certain customer complaint information that is not required to be reported may be disclosed provided certain criteria are met.

Additional information not disclosed through BrokerCheck includes Social Security Numbers, residential history information, and physical description information. On a case-by-case basis, FINRA reserves the right to exclude information that contains confidential customer information, offensive and potentially defamatory language or information that raises significant identity theft or privacy concerns that are not outweighed by investor protection concerns. NASD Interpretive Material 8310-2 describes in detail what information is and is not disclosed through BrokerCheck.

Under FINRA's current public disclosure policy, in certain limited circumstances, most often pursuant to a court order, information is expunged from the CRD system. Further information about expungement from the CRD system is available in NASD Notices to Members 99-09, 99-54, 01-65, and 04-16 at www.finra.org.

For further information regarding FINRA's BrokerCheck program, please visit FINRA's Web Site at www.finra.org/brokercheck or call the FINRA BrokerCheck Hotline at (800) 289-9999. The hotline is open Monday through Friday from 8 a.m. to 8 p.m., Eastern Time (ET).

For more information about the following, select the associated link:

- About BrokerCheck Reports:  http://www.finra.org/brokercheck_reports
- Glossary:  http://www.finra.org/brokercheck_glossary
- Questions Frequently Asked about BrokerCheck Reports:   http://www.finra.org/brokercheck_faq
- Terms and Conditions:  http://brokercheck.finra.org/terms.aspx

©2007 FINRA. All rights reserved.    Report# 60183-22352 generated on Monday, November 19, 2007 about CARL R. KUNZ

User Guidance

www.finra.org/brokercheck

Report# 60183-22352 generated on Monday, November 19, 2007 about CARL R. KUNZ

©2007 FINRA. All rights reserved.

# NSCP JOBLINE REGISTER FAQ

NATIONAL SOCIETY OF COMPLIANCE PROFESSIONALS INC.

Phone: 1.86

**Resume Bank**

Email: [          ]

Password: [          ]

[ Login ]

Register    Forgot password?

QUICK SEARCH

Employers, please login
to search Resumes.

Keyword:

Location:
All Locations

Search

**Job Post**

Email: [

Password: [

Register    Forgo

---

Job Post Preview

**Position Details:**

**Job Title: Compliance Officer**

COPY

**Company Information:**
PEAK6 Investments, L.P.
Chicago, Illinois

**Description:**
**The Opportunity:**
**Dynamic, growth-oriented financial services firm seeks a Compliance Officer for its investment advisor and brol affiliates. The primary responsibility of this compliance position is to assist in the development and implementa effective compliance program for a registered investment advisor and broker-dealers. Responsibilities will also conducting compliance reviews of the businesses. Qualified candidates must have proven abilities in the areas below:**

**Core Responsibilities**
•**Working knowledge of SEC and SRO regulations relating to a registered investment advisor and/or broker deal
•Specific experience in developing, implementing and enforcing a detailed compliance program (including polic procedures) to ensure compliance with SEC / SRO regulations and firm policies.
•Ability to identify potential areas of compliance vulnerability and risks; articulate and implement corrective acti
•Skilled in researching new or changed laws and regulations (and corporate policy where applicable) to determi on processes, procedures and information systems.
•Experience in conducting comprehensive compliance reviews of businesses and ability to identify initiatives fc coming year.
•Ability to monitor and administer a compliance training program for employees.
•Working knowledge of record retention requirements applicable to registered investment advisors and broker-
•Familiarity with anti-money laundering regulations and requirements.**

**Desired Candidate Attributes**
•**Excellent oral and written communication and interpersonal skills.
•Ability to work with others to mutually agree upon sound compliance practices, procedures and supervision.
•Have a proven track record of ability to work with regulators.
•Good common sense and practical approach to problem solving.
•Ability to think creatively and abstractly to find new ways to accomplish goals.**

**Candidate Requirements:**
**Technical Knowledge and Experience and Educational Requirements:**

•**Must have 5+ years of experience in a compliance or regulatory environment.
•Series licenses not required but preferred.**

**Salary / Benefits:**
**Compensation and Rewards:**

**This opportunity offers a commensurate market base salary, benefits and bonus potential.**

**Employer Contact Information: (company that has posted this position)**

**Company Address: PEAK6 Investments, L.P.**
**141 W Jackson Blvd**
**Suite 500**
**Chicago, Illinois    60604**

**Website: http://www.peak6.com**
**Toll Free: N/A**
**Phone: N/A**
**Fax: 866-563-3343**
**E-Mail: nmckinney@peak6.com**

**Additional Information:**

**Please email a text copy of your cover letter**
**Please email a text copy of your resume**
**Please include your salary history**
**Please include your salary requirements**
**Please do no fax information**
**Please do not call**

# YAHOO! MAIL

Print - Close Window

| | |
|---|---|
| **Date:** | Thu, 19 Apr 2007 06:08:36 -0700 (PDT) |
| **From:** | "Robert Larson" <rbtjlarson@yahoo.com> |
| **Subject:** | Compliance Officer at PEAK6 |
| **To:** | nmckinney@peak6.com |



ROBERT J. LARSON
915 Hinman Avenue
Apartment 3E
Evanston, IL 60202
(847) 864-0964
E-mail rbtjlarson@yahoo.com


April 19, 2007

RE: Compliance Officer Position

Dear Ms. McKinney:

Attached please find my resume for your review and
consideration.

I am responding to your advertisement on the National
Society of Compliance Professional (NSCP) Jobline
Website that you placed on Friday, April 13, 2007 in
search of a Compliance Officer for PEAK6 Investments,
L.P.

I have twenty-five years of securities industry
experience and fourteen as a Director of
Compliance/Chief Compliance Officer.

I have all of the securities licenses that are
required along with being a State of Illinois
Insurance producer for the past eight years.

At OptionsHouse, Inc. my salary was $120,000 annually
plus a bonus. My salary requirement is $120,000
annually plus bonus if one is offered.

Should you want to contact my former supervisor,
please contact Mr. Daniel Rosenthal, President & CEO,
OptionsHouse, Inc. at 312-362-2477.


Thank you.

Robert J. Larson


_____
Do You Yahoo!?
Tired of spam?  Yahoo! Mail has the best spam protection around
http://mail.yahoo.com



**Attachments**

Files:

📎 **Larson_PEAK6_Resume.doc** (43k) [Preview]

**ROBERT J. LARSON**
**915 Hinman Avenue**
**Apartment 3E**
**Evanston, IL 60202**
**Home (847) 864-0964**
**E-mail rbtjlarson@yahoo.com**

**Professional Objective**
To continue a twenty five year management career in the financial services industry.

**Registrations & Licensing Securities Industry Registrations**
*Series 3* Registered Commodities Representative (July 1988)
*Series 4* Registered Options Principal (December 1986)
*Series 7* General Securities Registered Representative (September 1986)
*Series 8* General Securities Sales Supervisor (August 1988)
*Series 14* Compliance Officer (June 1991)
*Series 24* General Securities Registered Principal (November 1986)
*Series 27* Financial & Operations Principal (June 1987)
*Series 53* Municipal Securities Registered Principal (February 1987)
*Series 55* Equity Trader (December 1999)
*Series 63* Uniform State Securities Law Examination (March 1987)
*Series 65* Uniform Investment Advisor Law Examination (December 1993)
*Insurance Industry Licensing* (July 1998)
    Illinois Accident & Health Insurance Producer
    Illinois Casualty Insurance Producer
    Illinois Fire Insurance Producer
    Illinois Life Insurance Producer
    Illinois Variable Contracts Producer
    Illinois Long-Term Health Care Producer

**Employment History**

October 2005 to January 2007 **OptionsHouse, Inc., a wholly-owned subsidiary of PEAK6 Investments LP**
*Director of Compliance/FINOP/CROP and SROP - Chicago, IL*

Chief Compliance Officer and Executive Representative for an NASD member firm that is an On-Line Broker-Dealer specializing in options-related trading strategies. Registered the firm with the NASD, SEC, SIPC and all fifty states, DC and Puerto Rico. Continuing Education Program Administrator including Needs Analysis and Training Schedule Shared in writing various supervisory, compliance, operations and training manuals Responsible for the firm passing of the 2006 NASD Initial Routine Compliance Exam Reviewed and approved the firm FOCUS filings.

May 2003 to January 2005 **First Analysis Investment Corporation**
*President and Chief Executive Officer*
October 2001 to January 2005 **First Analysis Securities Corporation**
*Director of Compliance/FINOP/CROP - Chicago, IL*

Chief Compliance Officer and Executive Representative for an NASD member
firm that provides securities research analysis for 110 publicly traded companies.
Responsible for the compliance activities of fifty registered employees
Responsible for the conversion of clearing firm from BNY to Jefferies & Co. in 2003
U.S. PATRIOT ACT Anti-Money Laundering Administrator
General, CROP, FINOP and Municipal Principal
CEP Administrator including Needs Analysis and Training Schedule Writer
Administrator for the OATS and Canadian NRD Systems and Rule 606 Administrator
Administrator for the NASD Web CRD and IARD Registration Systems
Shared in writing various supervisory, compliance, operations and training manuals
Responsible for the passing of 2002 and 2004 NASD Routine Compliance Exams
Responsible for the passing of the 2003 and 2004 Anti-Money Laundering Exams
Responsible for the passing of the 2003 SEC Routine Compliance Examination
Responsible for the compliance review of the firm's trades through REDI ECN Trade System
President & CEO and NASD Executive Representative of a State of Illinois RIA.

June 1999 to May 2001   **The Third Market Corporation**
*Vice President and Director of Compliance/FINOP/CROP -  Chicago, IL*

Chief Compliance Officer and Registered Equity Trader for an NASD member
firm that makes markets in over 200 CQS and NASDAQ securities over-the-counter
Responsible for the compliance activities of eighteen registered equity traders
U.S. PATRIOT ACT Anti-Money Laundering Administrator
General, CROP, FINOP, Municipal Principal and OATS Administrator
CEP Administrator including Needs Analysis and Training Schedule Writer
Shared in writing various supervisory, compliance, operations and training manuals
Calculated the  quarterly One Percent Listed Stock trading requirement
Responsible for the passing of the 2000 and 2001 NASDR TMMS Examinations
Responsible for the outcome of the 2000 SEC Limit Order Display Rule Examination
Responsible for the compliance review of the firm's Brass System activities.

July 1989 to October 1990  **Shearson Lehman Brothers, Inc.**
*Assistant Vice President - Litigation & Regulatory Analysis Group – New York*

Compliance Officer and ROP for firm who was a member of all of the world's
major exchanges and a full service broker-dealer
General, FINOP, Municipal and Options Principal
Investigated customer complaints and lawsuits, and arbitration claims
Responded to regulatory inquiries concerning terminations for cause
Testified as an expert and fact witness in various SRO, federal and
state courts.
Performed churning and turnover analysis relating to regulatory inquiries
and customer legal actions against the firm.

April 1982 to August 1986  **National Association of Securities Dealers**
*Senior Compliance Examiner – Chicago, IL*

Senior examiner for the self regulatory organization for the over-the-counter securities industry
Attended Phases I and II of the NASD Examiner Training School in Washington, D.C.

**Education**
Awarded in February 1980
*MASTERS OF BUSINESS ADMINISTRATION*
Major in Finance and a Minor in Economics
*De Paul University - Chicago, IL*

Awarded in August 1978
*BACHELOR OF SCIENCE IN BUSINESS ADMINISTRATION*
Major in Finance, Economics and a Minor in Accounting
*Rockhurst University - Kansas City, MO*

*FIRST YEAR LAW SCHOOL STUDENT*
*John Marshall Law School - Chicago, IL*

**Arbitrator**
*National Association of Securities Dealers, Inc.* since November 1991.

**Robert J. Larson**
**5334 North Kenmore Avenue**
**Apartment 1N**
**Chicago, IL 60640**
**Tel 773-989-5588**
**rbtjlarson@yahoo.com**

June 12, 2007



Merri Jo Gillete
Regional Director
U.S. Securities and Exchange Commission
Midwest Regional Office
175 West Jackson Boulevard, Suite 900
Chicago, IL 60604
(312) 353-7390 (phone)
(312) 353-7398 (fax)

**RE: OptionsHouse, Inc. (f/k/a "ezOptions, Inc.")**
    **SEC # 8-66936**
    **CRD # 135625**
    **IRS # 43-2076584**

Dear Ms. Gillete:

I am writing to your in order to provide you with pertinent information concerning my termination from my former employer. OptionsHouse, Inc., located at 141 West Jackson Blvd. Suite 500, Chicago, IL 60604. a registered SEC broker-dealer and a member of the National Association of Securities Dealers, (CRD #135625). OptionsHouse, Inc. is a wholly owned subsidiary of PEAK6 Investments LLC, (SEC File #28-112346). PEAK6 Investments is 100% owned by Matt N. Hulsizer and Jennifer Just, who are husband and wife.

**Background**
I am filing this document in order to protect myself against potential lies concerning activities during my registration with OptionsHouse as the Director of Compliance and Executive Representative, where I worked from October 28, 2005 through and including January 26, 2007. I know that various NASD and SEC Rules where violated during the last six months of my employment. I diligently notified all parties who were actively involved in the management of OptionsHouse about these violations, but rather than be rewarded for my honesty and hard work, I was terminated in order to hide the truth.

**Personal Background of Robert J. Larson**
As an introduction, I am 50 years old and a United States citizen. I have twenty five years of securities industry experience. The last fourteen as a Director of Compliance/CCO. I originally was an NASD Senior Compliance Examiner from April 1982 until August 1986. I became a registered representative in September 1986 and a

52

registered principal in November 1986. I have been a Director of Compliance for the last fourteen years for various NASD and Exchange member firms.

I originally interviewed for the Director of Compliance position at OptionsHouse (f/k/a ezOptions) with Mr. Daniel Rosenthal, President and CEO and Robert Baldwin, Director of Business Operations in February 2005. Ta that time Mr. Rosenthal told me that they could not hire me, but that if there was a need for my services, they would. It was not until October 24, 2005 that I was again contacted by Mr. Rosenthal, who told me that the NASD was prepared to approve the firm for NASD Membership but that the NASD District No. 8 staff felt that a more seasoned person was needed as Director of Compliance. My name and credentials were submitted to the NASD staff members and they stated that if OptionsHouse was to hire me that they would accept my registrations and experience and approve the firm for membership. I accepted a position with the firm on Tuesday, October 25, 2005 and met with the NASD District 8 staff for the Pre-Membership Interview (PMI) that afternoon.

I was hired by Mr. Daniel Max Rosenthal, (CRD# 4971856) President and CEO of OptionsHouse. My first full workday at OptionsHouse was Friday, October 28, 2005.My salary was $120,000 per year (i.e. $10,000 per month). I was also told that I would receive a bonus if funds were available.

On Friday, January 26, 2007, I was to have received my annual bonus, but instead, I was terminated at 2:50 PM, by Mr. Rosenthal and Mr. Arthur John Hass III, (CRD# 2172376) who was, at that time, Co-CEO with Mr. Rosenthal. I would like to note that I never received my bonus nor was I provided with any monetary severance.

At that time Messrs. Rosenthal and Hass told me that they no longer had any further need of my services. No other information was provided to me, (see Exhibit "1"+` for a copy of my Form U-5).

### *Violation of NASD and SEC Books and Records Rules*
One of the requirements of all NASD member broker-dealers who do a public business is to abide to both Federal SEC and NASD Conduct Rules. OptionsHouse was approved for NASD membership in November 2005, it was not until August 2006 that the firm had any public customers, (and these were basically PEAK6 family related accounts).

The NASD had conducted its New Membership Examination in April and May 2006. Due to the fact that we had done no business at the time of the initial examination, the NASD Examination staff  - and me for that matter -  could only assume and estimate how the firm's regulatory reporting would work,

After our initial NASD Membership Examination, there were two areas that were of a concern for me:

### 1) Daily OATS Reporting
The daily reporting of Order Audit Trail System (i.e. "OATS") eligible securities, by OptionsHouse to the NASD (as required by NASD Rule 6950 and 6951-6958, see the NASD Manual). During the early part of 2006 I registered the firm with the NASD OATS Reporting System. The MPID for our firm was: EZOP and I was designated as the OATS Administrator for OptionsHouse.

When the NASD had conducted its initial New Member Examination, we had thought that Merrill Lynch Execution (MLCX), one of our order execution firms, would report our OATS-eligible trades for us. I registered OptionsHouse with OATS and I was the designated OATS Administrator. Our firm's Market Participant Identification (i.e. "MPID") was "EZOP". I designated "MLCX" as our OATS Reporting Firm, for which they initially acknowledged that they would do. Since we had done no business, and would not do any business until August 2006, this all was well and good.

Apparently though, there were disagreements between the senior management of OptionsHouse and the senior management of Merrill Lynch Execution concerning execution charges and OATS reporting responsibilities. As such, the execution agreement between OptionsHouse and Merrill Lynch Execution was cancelled. The senior management of OptionsHouse then signed an execution agreement sometime in late August 2006 with a firm called Interactive Brokerage, (i.e. "IB"). IB agreed to execute out trades, but that they would not do our OATS reporting for us.

It should be noted at this time that I was never included in any of these agreement meetings with either Merrill Lynch or Interactive Brokerage. I was only provided with a copy of the contracts for filing in the Regulatory Storage Files after all of the agreements had been signed and finalized.

During a meeting concerning our order execution held in late August 2006. A discussion arose questioning that since IB was not going to be our OATS Reporting Firm, it was decided by Daniel Rosenthal, OptionsHouse President & CEO, that OptionsHouse would report its own OATS Eligible trades directly to OATS. In other words, we would become a Direct OATS Reporting Member. It was at this time that I stressed to all members of the firm, not just management that we would be in OATS violation if we did any OATS eligible trades and did not report them. Mr. Rosenthal told me that we would just have to move forward with reporting the OATS trades and the person who we hire to construct ours OATS Reporting System would have to move quickly. I voiced my concern to Mr. Rosenthal at this time that there was no exemption from OATS Reporting. He told me that we should move forward and not worry about such things. The people present at this meeting were: myself as Director of Compliance; Daniel Rosenthal, President & CEO; Richard Bojanowski, Director of Business Development (CRD# 4040154 and who had replaced Robert Baldwin earlier in the year); Joel Blumenau, Director of Customer Service (CRD#2592445); Gong Szeto, Director of Marketing; and Dave Budworth, Director of Management Information Services. I was also told by Mr. Rosenthal that Ms. Donna Joy MacDonald (CRD#1178698) the Director of Compliance for PEAK6 Investments, LLC and the owners of the firm, Matt Hulsizer and Jenny Just had also been notified of my concerns.

In September 2006, after numerous inquiries about OATS reporting on my part, Mr. Rosenthal hired Mr. Robert Lund as the person who would write the computer programs for connecting OptionsHouse to the OATS System. Mr. Lund had worked with Mr. Budworth in California for a number of years prior to Mr. Budworth's move to Chicago. Mr. Budworth spoke very highly of Mr. Lund, both as a personal friend and fellow worker. Mr. Lund moved from California to Chicago in early September 2006 to start his new job at OptionsHouse. When I met Mr. Lund, I found him to a laid-back, personable and very knowledgeable computer program designer and writer. Mr. Lund had worked with Mr. Budworth at a firm I believe was called "e-Loan," it specialized in finding mortgage loans

for prospective home buyers on the Internet. I had great confidence that Rob Lund would get the job done with all respect to OATS reporting.

Rob Lund had never worked with the OATS System, so I printed out a copy of the NASD OATS Technical Specifications Manual and a copy of the OATS Administrative Manual. He kept the OATS Technical Manual and I kept the OATS Administrative Manual.

Rob started working on designing an OATS Reporting System immediately upon his arrival. I know that Rob Lund had numerous meetings over the next five month period with Mr. Rosenthal concerning the status of development of the OATS system. During this time we transacted trades in OATS-eligible securities and no Daily OATS Report was ever filed. I stressed to Mr. Rosenthal that it was a severe violation of NASD OATS Rules and SEC Rules 17a-3 and 17a-4 not to report either: 1) the eligible trades themselves and 2) the fact that we were deficient in our OATS Reporting capabilities. Mr. Rosenthal told me to be silent and in no way was I to notify any regulator about our OATS situation. I told Mr. Rosenthal that if the SEC or NASD discovered this situation, they would fine and/or possibly close the firm. He told me that that was for him to worry about, not me. Mr. Richard Bojanowski, the Director of Business Development, who was also responsible for the firm's operations also voiced the same concerns to Mr. Rosenthal and he too, was told to remain silent.

On or about Wednesday, September 13, 2006, I held a Continuing Education Program Meeting attended by ALL employees of OptionsHouse wherein the only subject covered was the OATS Reporting System. Every OptionsHouse employee, both registered and non-registered, attended the meeting. A signed attendance sheet should be in the CEP File for review and verification. During this CEP Meeting, I covered all aspects of OATS. I provided each employee with a copy of all of the OATS Rules taken directly from the NASD Manual. I also included copies of all of the NASD Notices-to-Members pertaining to OATS. I provided a pass-around-copy and I then reviewed the OATS Administrative Manual for everyone to read and ask questions of me about OATS. I then introduced Rob Lund, let everyone know that he would be writing our new OATS Reporting Program and I then provided a pass-around-copy of the OATS Technical Specifications Manual. I also again, during this meeting, reiterated that we not reporting our current OATS trades and that we needed to have the OATS Reporting System up and running as soon as possible.

Mr. Lund worked on our internal OATS Reporting System from September 2006 through and including the first week of January 2007. During that time, not one single OATS Report was filed by OptionsHouse. I continued to tell Mr. Rosenthal that even though Mr. Lund was creating a new OATS Reporting System, our firm was in violation of both the NASD OATS Reporting Rules and the NASD and SEC Books and Records Rules. Mr. Rosenthal told me to remain silent about the matter and that no regulator should be notified of these violations. Mr. Rosenthal threatened to fire me for reporting these violations to any regulatory entity.

On September 29, 2006, at approximately 2:00 PM, I filed a written complaint with Ms. Nancy McKinney, PEAK6 Director of Human Resources about this and other matters and I told Ms. McKinney that I felt Mr. Rosenthal was discriminating against me, (see Exhibit '2'). Ms. McKinney told me that she would investigate my allegations but never responded to me. It was not until January 26, 2007, when she was present at my

termination meeting that she told me that she had found no violations of my PEAK6 employee rights by Mr. Rosenthal.

The next week, on Monday, October 2, 2006, Mr. Arthur John Hass III joined the firm as Co-CEO. On Wednesday, October 4, 2006, at approximately 3:15 PM, I met with Messrs. Rosenthal and Hass to provide them with a copy of the NASD Disciplinary Guidelines pertaining to violations of the NASD OATS System (see Exhibit "3").

Again, both Messrs. Rosenthal and Hass warned me to keep my mouth shut and not report the matter to any regulator or risk termination. I was also told not to put any of my concerns in written form and never e-mail either of them concerning the matter so that any regulatory agencies investigating the matter could not find a paper trail. At that time, I told them that the firm had violated OATS Reporting Rules for over sixty straight calendar days.

On or about Wednesday, October 11, 2006, at around 2:00 PM, I contacted Ms. Nichole C. Clark-Ake, who is the Director of Compliance and Chief Compliance Officer of Penson Financial Services, Inc., 1700 Pacific Avenue, Suite 1400, Dallas, Texas, 75201, telephone 214-765-1000. (Note: Penson is the firm who OptionsHouse clears all of the firms securities transactions through on a "fully-disclosed" basis). I notified her of the violations of the OATS Reporting Rules by OptionsHouse. I also asked her to contact Messrs. Rosenthal and Hass and reiterate to them the severity of the violations of not reporting the transactions on a timely basis. I contacted her later and she told me that she did discuss the matter with Messrs. Rosenthal and Hass and That they were aware of the potential regulatory problems.

During this time also, the firm also hired Mr. Peter Traugutt Lawler, (CRD#1131068) as the Director of Institutional Business. I recall a employee meeting in early November 2006 wherein Mr. Lawler attended where again reiterated to all who were present that were violating NASD OATS Reporting Rules by not having an OASTS reporting System. So he also was well aware of the firm's OATS violations.

It was also at this November 2006 meeting that I discussed SEC Release 34-54585 (I.e. SR-NASD-2005-101) which expanded the OATS reporting requirements to OTC Equity Securities effective in early 2007.

At that November 2006 meeting, Messrs. Rosenthal and Hass assured all who were present that Mr. Lund was diligently working on the completion of the OATS Reporting System for OptionsHouse. .At that time, the firm was close to failure to file OATS Reports for calendar ninety days.

On Tuesday, January 2, 2007, without any prior notice, at around 10:30 AM, Mr. Lund came to me to say good-bye. He said to me, "it just did not work out between OptionsHouse and him and that he was returning to California." I wished him well. He worked for OptionsHouse approximately four months and never finished our OATS Reporting System.

I immediately went to Messrs. Rosenthal and Hass to let them know that we should report via telegraph the lack of an OATS Reporting System to the SEC and NASD immediately, as required by SEC Rule 17a-11, paragraphs (d) and (e) and the amended NASD Rule 3170. I told them that we should send immediate telegraphic notice to the

SEC and NASD and notify all of the states that we were registered in also. Both Messrs. Rosenthal and Hass instructed me to remain silent about the matter and not tell anything about our OATS reporting problem to any regulator.

At this time, OptionsHouse had failed to report OATS eligible trades to the NASD from late August 2006 through and including January 2007, some five months.

On the day of my termination from OptionsHouse, January 26, 2007, I estimate that the firm had failed to file some 110 business days of required OATS Reports.

My other concern dealt with:

2) Daily Review of E-Mails and Instant Messages
The daily review of e-mails and Instant Messages with and to clients, (required by SEC Rules 17a-3 and 17a-4, see pages 1234-1235, NASD Manual and NASD Conduct Rule 3010, Supervision, paragraphs (d)(2) and (d)(3), Review and Retention of Correspondence, see the NASD Manual

One of the SEC and NASD required functions is that a Registered Principal review a representative daily sample of the firm's sales-related e-mails and Instant Messages (IMs). I was responsible for this function. When the NASD Examiners had visited the firm in April and May of 2006, we had no customers, so the only e-mails that we had were operational e-mails, which I reviewed on a daily basis. There were no problems. After the NASD and left and in August 2006, when we started to do a business, I determined that I was not getting all of the e-mails for proper review. I was also not receiving any Instant Messages for review. I have never had an IM account through OptionsHouse, but in other firms which I have worked for, have had IM systems and I was responsible for the review of those sales-related communications also.

Sometime in September 2006, I approached Mr. Rosenthal and asked him when OptionsHouse would provide me with a proper review system foe Instant Messages. Mr. Rosenthal told me that once Rob Lund had finished the OATS Reporting System that he would then assist me with creating proper review system. When it became apparent that Rob Lund would not be able to assist me, Mr. Rosenthal told me that Mr. Dave Budworth, the Director of MIS would either help me himself or find someone else to assist me. I never heard from anyone else. Whenever I would ask about the IM review system, I would be told that it was on their "list of things to do" but was not considered a high priority item. Currently, OptionsHouse has no IM Review System.

Mr. Lund also worked on our E-Mail and Instant Message Review System from September 2006 through and including the first week of January 2007. During that time, I was unable to properly review all incoming or outgoing e-mail and instant message correspondence. I continued to tell Mr. Rosenthal that even though Mr. Lund was creating a new E-Mail and Instant Message Review System, our firm was in violation of both the NASD Conduct Rule 3010 and the NASD and SEC Books and Records Rules. Mr. Rosenthal told me to remain silent about the matter and that no regulator should be notified of these violations. Mr. Rosenthal threatened to fire me for reporting these violations to anyone.

### Termination Meeting

On Friday, January 26th, at 2:45 PM, I received a telephone call from Nancy McKinney, the PEAK6 Director of Human Resources requesting that I come to see her in her office. I expected at that time to receive my annual bonus which had been paid to each of the other 182 OPEAK6 employees. When I arrived in here office at 2:50 PM, Messrs. Hass and Rosenthal where there in her office. I was told by Messrs. Hass and Rosenthal that they, "were no in longer need of my services" and that I was being let go. They told me that I could claim unemployment and that they would not contest it. Ms. McKinney then asked me for my Access Key Card which allowed me access to the PEAK6 Office, I immediately gave it to her.

It was at this time that they provided me with a legal waiver document wherein for a payment of $5,000 less payroll taxes, I would waive all of my federal, state and local employee legal rights and not discuss my employment experience with any other person or entity including the SEC or any other governmental regulatory body. I told them that I had no intention of signing such a document. Ms. McKinney told me that I had twenty one calendar days to change my mind and sign the document (see Exhibit '4').

Mr. Hass then told me at that time that they had already interviewed and hired my replacement, (who I later learned was a Mr. Carl R. Kunz, CRD# 4207522).

Mr. Rosenthal then asked me if I wanted to resign rather than being laid off and for Form U-5 (i.e. the federal securities form which notifies the SEC, NASD and all of the states of the reason for your termination from a securities firm, see again "Exhibit '1') purposes and I said that I definitely wanted my Form U-5 to state that I was "Laid-Off", I had no intention of resigning from OptionsHouse/PEAK6 because I know that I had done nothing wrong to resign.

### Misreprentation on my Form U-5

According to Federal Securities Law any registered person such as myself, registered with a registered broker-dealer, in this case, OptionsHouse, Inc., must receive in thrity calendar days a Form U-5, more properly called a "Uniform Termination Notice" whereby the reason for a person's termination from a broker-dealer may be reported to the SEC, NASD and states via the Central Registration Depository (i.e. "CRD") System. On that form, there are various categories for terminating from a broker-dealer, such a voluntary termination, discharged, permitted resign, death and other. In other, you would list "Laid-off."

Since I refused to sign this waiver, the firm reported that rather than being laid-off, that I was "Discharged as a Result of the Reorganization of the Compliance Department. This implies that I violated some firm or security rules which is not true. Also, I was the Compliance Department, how can you reorganize one person? As a have noted earlier, they replaced me with Mr. Carl R. Kunz, (CRD# 4207522), who I have know socially from various NASD and SIA industry gatherings. I fail to see why I was replaced by Mr. Kunz when I have more securities registrations and experience than he has. Also, why was I not retained when I had more registrations and experience than Donna MacDonald, the Director of Compliance for PEAK6. I also had worked six months longer than Ms. MacDonald had when I was terminated.

The only two reasons I feel for being terminated the way in which I was is because of my Age, for which I have filed a Complaint against OptionsHouse/PEAK6 through the U.S.

Equal Employment Opportunity Commission (i.e. "EEOC") and the insistence that the firm file telegraphic notice with the SEC, NASD and states for the various violations of SEC Rule 17a-11 and NASD Rule 3170.

### Complaints Filed with Regulatory Agencies

On Tuesday, February 6, 2007 at 10:30 AM I hand delivered a fourteen page report concerning my termination and the OptionsHouse OATS Reporting and e-mail/Im review violations to Ms. Carla A. Romano, Senior Vice President & District Director of NASD District No. 8, at her office located the 27th Floor of 55 West Monroe Street, Chicago, IL 60604. Telephone her at 312-899-4400. Ms. Romano and I had worked together at the NASD District 8 Offie during the early to mid 1980s, (see Exhibit '5').

On February 20, 2007, I filed a formal Charge of Discrimination numbered 440-2007-03177 with the U.S. Equal Opportunity Commission and the Illinois Department of Human Rights against OptionsHouse/PEAK6 alleging violation of my employment rights under the Age Discrimination in Employment Act of 1967 and for taking eetaliation against for my September 29, 2006 letter to Nancy McKinney, (see Exhibit '6'). The person who you may contact concerning this matter is Ms. Sarronda C. Harris, Federal Investigator, who is located at the offices of the U.S. Equal Employment Opportunity Commission, Suite 2800, 500 West Madison, Chicago, IL 60603, telephone direct at 312-886-9320, (see Exhibit '6').

Please note that I am still awaiting a final response from both the NASD and EEOC.

At present, I am still unemployed and my family and I do not have any health insurance.

Mr. Robert Baldwin, who originally interviewed me in February 2005 for the Director of Compliance position, and then worked with me throughout the entire time that I was an employee at OptionsHouse agrees that I was illegally terminated. Mr. Baldwin retired from OptionsHouse/PEAK6 in April 2007 and has told me that he would be willing to testify on my behalf. You may call him at his home at 312-588-1592 for further information.

I respectfully ask that you investigate my claims. I feel that numerous people affiliated with OptionsHouse/PEAK6 are trying to cover the OATS and e-mail/IM review violations up so that regulators such as yourself would not discover them.

I am very frustrated, I did my job and rather than be rewarded for my honesty I was illegally terminated by my superiors. Please contact me if you require further information. I am enclosing a copy of my current resume for your review, (see Exhibit '9').

Respectfully submitted,

COPY

Robert J. Larson
CRD 1565322
SSN 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



ILLINOIS DEPARTMENT OF

# Human Rights

Rod R. Blagojevich, Governor
Rocco J. Claps, Director

June 29, 2007

Mr. Robert J. Larson
915 Hinman Avenue
Evanston, Illinois 60202

Re:    **Larson V. Peak6 Investments, LLP., 070630152:**

Dear Complainant:

When you filed your charge of discrimination with the United States Equal Employment Opportunity Commission (EEOC) it was automatically filed with the Illinois Department of Human Rights. The Department is keeping a copy of your EEOC charge on file to preserve jurisdiction under Illinois law. If you wish to proceed with the Department, you must notify the Department in writing of your decision within 35 days of receipt of this letter. Your failure to notify the Department within 35 days of receipt of this letter will result in the Department closing your file.

When you submit your written request to the Department within 35 days of receipt of this letter, if you have the EEOC determination and findings, you should include a copy of it and a copy of the EEOC charge with your written request. **The letter should be sent to the Department of Human Rights, ATTN: EEOC Referred Charges/Intake Unit, and sent via U.S. Postal certified mail, return receipt requested.** If you choose to personally deliver the letter and EEOC's findings, you must bring an original and one copy of each. The Department will stamp the copies and one will be returned to you for your records.

When the Department receives your letter, including a copy of EEOC's determination and findings, you will be sent a notice to perfect your EEOC charge by signing the charge and having it notarized. If you do not perfect the charge (by signing it and having it notarized) and return it to the Department within 35 days after you receive the Department's notice, the Department shall conclude that you do not want the Department to investigate your claim and shall close your case. Upon receipt of the perfected charge the Department may adopt the EEOC determination and findings.

It is not necessary that Respondent take any action at this time.

This letter does not apply to any settlement of this charge the parties have made with EEOC.

THE DEPARTMENT OF HUMAN RIGHTS

cc: Director of Human Resources
    Peak6 Investments, LLP.
    141 West Jackson Blvd.; Suite 500
    Chicago, Illinois 60604

DEPT. OF HUMAN RIGHTS
INTAKE UNIT

**JUL 1 2 2007**

RECEIVED

BY_____

Revised 6/2007

S3

**ROBERT J. LARSON**
**5334 N. Kenmore Avenue**
**Apartment 1N**
**Chicago, Illinois 60640**
**(773) 989-5588**
**E-mail rbtjlarson@yahoo.com**

July 12, 2007                    C O M P L A I N A N T     C O P Y

Mr. Rocco J. Claps, Director
Illinois Department of
Human Rights
100 West Randolph Street
James R. Thompson Center
Suite 10-100
Chicago, IL 60601
Tel: 312-814-6200

RE: Larson V. Peak6 Investments, LLP
    Case # 070630152

Dear Mr. Claps and Staff:

Please accept this letter as my written response to your letter to me dated June 29, 2007 concerning my charge of discrimination against Peak6 Investments, LLP.

I have not received a letter of determination from the EEOC as of this date. I have spoken to Ms. Sorronda C. Harris, Federal Investigator for the EEOC and she has told me that she hopes to have the file completed by sometime in September, 2007.

In response to your letter, I do respectfully request that you proceed with your investigation of my claims against Peak6 Investments, LLP.

Finally, please note that I have moved since I initially filed my compliant against Peak6 with the EEOC. My old address was:

Robert J. Larson
915 Hinman Avenue, Apt 3E
Evanston, IL 60202

My current address and telephone number are:

Robert J. Larson
5334 N. Kenmore Avenue, Apt 1N
Chicago, IL 60640
Tel: 773-989-5588

Respectfully yours,

Robert Larson

DEPT. OF HUMAN RIGHTS
INTAKE UNIT

**JUL 1 2 2007**

RECEIVED

BY_____

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA ☒ EEOC | 440-2007-03177 |

| Illinois Department Of Human Rights | | and EEOC |
|---|---|---|
| State or local Agency, if any | | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| **Mr. Robert J. Larson** | **(847) 864-0964** | **06-09-1957** |

| Street Address | City, State and ZIP Code |
|---|---|
| **915 Hinman Avenue** | **Evanston, IL 60202** |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (*If more than two, list under PARTICULARS below.*)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **PEAK6 INVESTMENTS LP** | **101 - 200** | **(312) 362-2401** |

| Street Address | City, State and ZIP Code |
|---|---|
| **141 W. Jackson Blvd., #500** | **Chicago, IL 60604** |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN<br>☒ RETALIATION  ☒ AGE  ☐ DISABILITY  ☐ OTHER (Specify below.) | Earliest **4-26-2006**   Latest **1-26-2007**<br>☐ CONTINUING ACTION |

THE PARTICULARS ARE (*If additional paper is needed, attach extra sheet(s)*):

I began my employment with Respondent on October 28, 2005. My most recent position was Director of Compliance. During my employment I was subjected to different terms and conditions of employment in that I was excluded from management meetings and I was not given my performance evaluations on May 16, 2006 or September 2006. On September 29, 2006, I complained of this to Human Resources, to no avail. In January 2007, I was denied my annual bonus. On January 26, 2007, I was discharged.

I believe I have been discriminated against because of my age, 49 (DOB 6-9-1957), and retaliated against, in violation of the Age Discrimination in Employment Act of 1967, as amended.

RECEIVED EEOC
FEB 2 0 2007
CHICAGO DISTRICT OFC

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| **Feb 20, 2007**    Date            Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

EEOC Form 5 (5/01)

070630153

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | 2007CN3582 |
| ☒ EEOC | 440-2007-03177 |

| Illinois Department Of Human Rights | and EEOC |
|---|---|

*State or local Agency, if any*

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Mr. Robert J. Larson | (773) 989-5588 | 06-09-1957 |

| Street Address | City, State and ZIP Code |
|---|---|
| 5334 N. Kenmore Ave., Apt. #1N | Chicago, IL 60640 |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (*If more than two, list under PARTICULARS below.*)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| PEAK6 INVESTMENTS LP | 101 - 200 | (312) 362-2401 |

| Street Address | City, State and ZIP Code |
|---|---|
| 141 W. Jackson Blvd., #500 | Chicago, IL 60604 |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN
☒ RETALIATION ☒ AGE ☐ DISABILITY ☐ OTHER (Specify below.)

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| 4-26-2006 | 1-26-2007 |

☐ CONTINUING ACTION

THE PARTICULARS ARE (*If additional paper is needed, attach extra sheet(s)*):

I began my employment with Respondent on October 28, 2005. My most recent position was Director of Compliance. During my employment I was subjected to different terms and conditions of employment in that I was excluded from management meetings and I was not given my performance evaluations on May 16, 2006 or September 2006. On September 29, 2006, I complained of this to Human Resources, to no avail. In January 2007, I was denied my annual bonus. On January 26, 2007, I was discharged.

I believe I have been discriminated against because of my age, 49 (DOB 6-9-1957), and retaliated against, in violation of the Age Discrimination in Employment Act of 1967, as amended.

RECEIVED EEOC
FEB 20 2007
CHICAGO DISTRICT OFC

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| | *[signature]* 7/13/0 |
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the above is true and correct. | SIGNATURE OF COMPLAINANT |
| | 7-13-2007 |
| Feb 20, 2007   *[signature]* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |
| Date          Charging Party Signature | |

"OFFICIAL SEAL"
RAQUEL C. GUERRA
Notary Public, State of Illinois
My Commission Expires 4/12/2008

54

ILLINOIS DEPARTMENT OF

# ◀Human Rights

Rod R. Blagojevich, Governor
Rocco J. Claps, Director

Date    July  20,  2007

LARSON ROBERT J
5334 N KENMORE #1N
CHICAGO, IL   60640                    **BY CERTIFIED MAIL**

Re: Charge No. :   2007CN3582
  Respondent:    PEAK6 INVESTMENTS LLP
  Complaint Filing Dates:    _7/13/08 - 8/12/08_

Dear Complainant:

You have filed a discrimination charge under the Human Rights Act. Enclosed
is a copy of your charge. A copy of the charge has been served on the
Respondent. KEEP THIS LETTER. HAVE IT WITH YOU IF YOU NEED TO
TELEPHONE OR COME TO THE DEPARTMENT (DHR). If there is an "A",
"E" or "F" in your charge number, we are enclosing an important notice from
the federal Equal Employment Opportunity Commission because your charge
has been automatically filed with that agency as well.

When a fact finding conference is scheduled, you will be advised of the date.
It is your responsibility to cooperate with the Department's investigation and
provide all pertinent information you have concerning the case by the dates
requested.

You have the right to file a complaint with the Human Rights Commission
(Commission) if the Department of Human Rights (DHR) has not completed
your case (either by filing a complaint with the Commission or issuing a
notice of dismissal) within 365 days from the date you filed your
PERFECTED signed and notarized charge or within any extension of that
time to which you and the Respondent have agreed in writing.

Your complaint must be filed within 30 days of the expiration of 365 days or
extension (see above paragraph). We have calculated the time above (see
Complaint Filing Dates). While we have made this calculation with the best of
intentions, errors can occur. The Commission has ruled that it is your
responsibility to count the number of days properly. If you file a complaint
outside this 30 day period, the Commission may dismiss your complaint.

100 West Randolph Street, James R. Thompson Center, Suite 10-100, Chicago, Illinois 60601, 312-814-6200, 312-263-1579 (TDD)

55

**page #2**

Once 395 days (or the extended time) have passed, DHR must dismiss your charge with prejudice without any further right to proceed if you have not filed a complaint with the Commission. Therefore, you may wish to contact an attorney to decide the best way for you to handle your case. If you file a complaint, the form of the complaint must be in accordance with Section 7A-102(F) of the Human Rights Act. You must serve a copy of the complaint on DHR, on the same day that you file the complaint with the Commission. The Commission will then schedule a hearing for your case before an Administrative Law Judge. If you have any questions about filing a complaint, you should contact the Commission at (312) 814-6268 or 814-6269.

You must advise the investigator of all changes of name, address, or telephone numbers. If you do not do so, DHR may dismiss your case if it cannot locate you. You will be notified when this case is assigned to an investigator.

CC: Respondent

IN-6 No Med
REV. 04/03



ILLINOIS DEPARTMENT OF
# Human Rights

Rod R. Blagojevich, Governor
Rocco J. Claps, Director

**July  20,  2007**


LARSON  ROBERT  J
5334  N  KENMORE  #1N
CHICAGO,  IL    60640

**RE:      Complainant  v.  Respondent**
Charge  Number:  2007CN3582


Dear Complainant,

The Department has been notified that you have filed a charge of discrimination with the United States Equal Employment Opportunity Commission (EEOC), and the Department has received your perfected (signed and notarized) charge.  As required by the Illinois Human Rights Act, the Department has served your charge on you and the Respondent.

You filed your charge originally only with the EEOC, and the EEOC is currently investigating your charge.  It is not necessary that your charge remain open with the Department.  You may stop any further proceedings with the Department by completing the attached Withdrawal Form and returning it to the Department within 35 days after you receive this letter.  Upon receipt of your signed Withdrawal, the Department shall close its file.

Failure to withdraw your charge will require the Department to proceed with an investigation while the EEOC is investigating the identical charge.

THE DEPARTMENT OF HUMAN RIGHTS



Cc:
Respondent  address

PEAK6  INVESTMENTS  LLP
141  W  JACKSON  #500
CHICAGO,  IL    60640

070630153

EEOC Form 5 (5/01)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | 2007CN3582 |
| ☒ EEOC | 440-2007-03177 |

Illinois Department Of Human Rights                    and EEOC

*State or local Agency, if any*

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Mr. Robert J. Larson | (773) 989-5588 | 06-09-1957 |

Street Address                                      City, State and ZIP Code
5334 N. Kenmore Ave., Apt. #1N    Chicago, IL 60640

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| PEAK6 INVESTMENTS LP | 101 - 200 | (312) 362-2401 |

Street Address                              City, State and ZIP Code
141 W. Jackson Blvd., #500          Chicago, IL 60604

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|

Street Address                              City, State and ZIP Code

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN
☒ RETALIATION ☒ AGE ☐ DISABILITY ☐ OTHER (Specify below.)

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| 4-26-2006 | 1-26-2007 |

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I began my employment with Respondent on October 28, 2005. My most recent position was Director of Compliance. During my employment I was subjected to different terms and conditions of employment in that I was excluded from management meetings and I was not given my performance evaluations on May 16, 2006 or September 2006. On September 29, 2006, I complained of this to Human Resources, to no avail. In January 2007, I was denied my annual bonus. On January 26, 2007, I was discharged.

I believe I have been discriminated against because of my age, 49 (DOB 6-9-1957), and retaliated against, in violation of the Age Discrimination in Employment Act of 1967, as amended.

RECEIVED EEOC
FEB 20 2007
CHICAGO DISTRICT OFC

| | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | 7/13/0: |
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT  7-13-2007 |
| Feb 20, 2007 | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |
| Date          Charging Party Signature | "OFFICIAL SEAL" RAQUEL C. GUERRA Notary Public, State of Illinois My Commission Expires 4/12/2008 |

PE△K6

## Careers

## Brokerage Supervisor

We are seeking a **Brokerage Supervisor** to report to the CEOs of OptionsHouse and be responsible for supervising day-to-day brokerage activities, various operational functions (such as the new account opening and approval process) and implementing OptionsHouse's supervisory procedures.

### Core Responsibilities

The Executive Assistant must be highly detail oriented and organized. Candidate should be extremely professional and have excellent communication skills (both oral and written).

- Review and approve new accounts applications
- Monitor customer account activity and employee trading via firm systems and exception

Service      Speed      Consistency      Price



## Brokerage Supervisor

We are seeking a **Brokerage Supervisor** to report to the CEOs of OptionsHouse and be responsible for supervising day-to-day brokerage activities, various operational functions (such as the new account opening and approval process) and implementing OptionsHouse's supervisory procedures.

### Core Responsibilities

The Executive Assistant must be highly detail oriented and organized. Candidate should be extremely professional and have excellent communication skills (both oral and written).

- Review and approve new accounts applications
- Monitor customer account activity and employee trading via firm systems and exception reports
- Review and approve correspondence
- Work with Chief Compliance Officer (CCO) to ensure all rules, regulations and policies are complied with by OptionsHouse
- Develop enhanced tools and/or systems to increase the efficiency of the broker dealer
- Evaluate and resolve potential customer complaints
- Working knowledge of NASD rules relating to brokerage supervision

### Qualifications

- Minimum of 3 years of managerial or supervisory experience in a securities firm and/or options environment (emphasis on options)
- Required securities licenses: 7, 24 and 63. Series 4 highly preferred. If the candidate is not currently a Registered Options Principal, they must be able to pass the qualification examination in a timely fashion
- Experience in an online brokerage environment is a plus
- Experience with NASD or NYSE examination process; proven ability to demonstrate favorable examination results
- The maturity, credibility and presence to interact with a wide range of professionals of varying seniority
- Ability to produce outstanding results within tight timelines with minimal structure and direction
- Excellent verbal/written interpersonal and communication skills
- Commitment to company values
- Strong organization and multitasking skills
- Meticulous attention to detail
- Proficient in MS Office Suite

### Education

- Bachelor's Degree

Service

# YAHOO! MAIL
### Classic

Print - Close Window

| | |
|---|---|
| **Date:** | Sat, 25 Aug 2007 21:22:23 +0100 (BST) |
| **From:** | "eFinancialCareers" <advertapplications@efinancialcareers.com> |
| **To:** | rbtjlarson@yahoo.com |
| **Subject:** | Your application for: Brokerage Supervisor |

COPY

Dear ROBERT,

Here are the job application details that you sent for Brokerage
Supervisor.

DATE SENT:  25 August 2007 20:22 GMT

JOB DETAILS
Job Title:     Brokerage Supervisor
Your Ref:      N/A
Posted: Aug 24 2007
eFC Job No:    319749

APPLICATION SENT TO
Name:  Not specified
Company:  Not specified
Email:  Not specified
Tel:  Not specified
Fax:  Not specified
Address:  None Specified

YOUR DETAILS
Name:  Mr Robert Larson
Email:  rbtjlarson@yahoo.com
Tel:  773-989-5588
Location:  IL-Chicago North, USA
Zip code  60640

YOUR COVER LETTER
Hello Nancy McKinney:

I would like to apply for the following job, which I saw advertised on
 eFinancialCareers.com:

Job Title: Brokerage Supervisor

I have attached my Résumé...

Robert J. Larson

YOUR Résumé
Résumé is attached.

*****************************************

Thank you for using eFinancialCareers.com - good luck with your
 application.

(57)

Promote your skills and experience anonymously to relevant recruiters
by posting your resume on eFinancialCareers.com.

eFinancialCareers
help-usa@efinancialcareers.com
www.eFinancialCareers.com

**Attachments**

Files:

📎 **4951916_CV.doc** (28k) [Preview]

# eFINANCIALCAREERS
The Financial Job Marketplace

Brokerage Supervisor, USA-IL-Chicago

## Brokerage Supervisor

| | |
|---|---|
| Company: | **PEAK6** |
| Location: | **USA-IL-Chicago** |
| Compensation: | **An attractive compensation package, including a competitive base salary and incentive bonus** |
| Position Type: | **Employee** |
| Employment type: | **Full time** |
| Updated: | 27 Aug 2007 |
| eFC Ref no: | 319749 |

**The Brokerage Supervisor will be responsible for signing off all NASD regulations to insure we are compliant. Candidate will be responsible for all NASD examinations, inquiries, and evaluations.**

**Core Responsibilities:**

There are 4 core responsibilities associated with this role:

• Work with NASD to insure all rules and regulations are met by PEAK 6

• Develop enhanced tools and/ or systems to increase the efficiency of the broker dealer

• Evaluation of potential customer complaints and offer resolution

• Complete understanding of NASD expectations and examinations

**Qualifications:**

• Minimum of 3 years of managerial or supervisory experience in a securities firm and/ or options environment (emphasis on options)

• Must have Series 7, 24, 63, and 4 registrations

• Managing experience in an online brokerage environment

• Proven experience going through all NASD exercises with favorable results

• Proficient in MS Office Suite

• The maturity, credibility and presence to interact with a wide range of professionals of varying seniority

• Ability to produce outstanding results within tight timelines with minimal structure and direction

• Excellent verbal/ written interpersonal and communication skills

• Commitment to company values

• Strong organization and multitasking skills

• Meticulous attention to detail

Company:
**PEAK6**

Website:
**http://www.peak6.com**

# YAHOO! MAIL
Classic

Print - Close Window

**Date:** Sat, 25 Aug 2007 11:10:41 +0100 (BST)

**From:** "eFinancialCareers" <psa@efinancialcareers.com>

**To:** rbtjlarson@yahoo.com

**Subject:** New jobs for Compliance

# eFINANCIALCAREERS.com                                    JOB ALERT

The Financial Job Marketplace                              www.efinancialcareers.com

Dear Robert Larson,

Your **COMPLIANCE** job alert has found **1 new jobs**:

| Showing Jobs 1 of 1 | Company | Location | ALERT SETTINGS |
|---|---|---|---|
| **Brokerage Supervisor** | Not Disclosed | USA-IL-Chicago | Compliance<br>Director of Compliance<br>Banking<br><br>**IN** Compliance / Legal<br><br>USA<br><br>**Frequency:** Daily<br><br>**Edit your alert »** |

eFinancialCareers.com        My eFinancialCareers        Post Resume        Search Jobs

Terms of Use and Privacy policy © Copyright 2000-2007 eFinancialCareers Ltd.

You have chosen to receive email job alerts from eFinancialCareers.com. If you wish to unsubscribe, click here.

878-5507

## ST. THOMAS OF CANTERBURY
### FOOD PANTRY: *Families with Children*

NAME: _Robert Karlson_

ADDRESS: _5234 N Kenmore_ APT. _1-N_

Number of Persons in Residence _3_

If you would take assistance next month, please name back

**FRIDAY, JULY 6, 2007**
BETWEEN 9:30 – 12:00 p.m.

COPY

(58)

# JAFFE & ASHER LLP

## ATTORNEYS AT LAW

ESTABLISHED 1974

PLEASE REPLY TO NEW YORK OFFICE

600 THIRD AVENUE
NEW YORK, NY 10016-1901
(212) 687-3000
TOLL FREE (888) 625-9895
FAX (212) 687-3601

NEW JERSEY OFFICE

1107 GOFFLE ROAD
HAWTHORNE, NJ 07507-0508
(973) 423-3998
(973) 423-6174 (FAX)

August 29, 2007

**VIA REGULAR MAIL and CERTIFIED MAIL,**
**RETURN RECEIPT REQUESTED**



Robert Larson
5334 North Kenmore #1 N
Chicago, IL 60640

Re:     American Express Acct. No. 3~~▮▮▮▮▮▮▮▮▮▮▮▮▮~~
        American Express Acct. No. 3~~▮▮▮▮▮▮▮▮▮▮▮▮~~
        J&A File No. ~~▮▮▮▮▮~~

Dear Robert Larson:

We are outside counsel to American Express and have been asked to contact you regarding the unpaid balance on the above referenced accounts. You owe American Express $15,166.97 for account number ~~▮▮▮▮▮▮▮▮▮▮▮▮~~ and $57,143.98 for account number ~~▮▮▮▮▮▮▮▮▮▮▮▮~~ for a total outstanding balance of $72,310.95.

We would like to give you an opportunity to make arrangements for the payment of your debt. Please contact the undersigned at the above number to discuss your unpaid balance. If you are represented by counsel, please have your attorney contact the undersigned.

This is an attempt to collect a debt and any information obtained from you will be used for that purpose. Unless you dispute the validity of the debt, or any portion thereof, within thirty (30) days from your receipt of this letter, the debt will be assumed to be valid by us.

If you notify the undersigned in writing within thirty (30) days from your receipt of this letter that the debt or any portion of it is disputed, we will obtain verification of the debt and a copy of such verification will be mailed to you. Upon your written request within thirty (30) days from your receipt of this letter, we will provide you with the name and address of the original creditor, if different from the current creditor.

Very truly yours,

JAFFE & ASHER LLP

By:

Jamie Polon

The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov.

59


DISC**O**VER
FINANCIAL SERVICES

PO Box 3008
New Albany, OH 43054-3008

October 7, 2007

LDPCRA01 0015133
Robert J Larson
5334 N Kenmore Ave Apt 1n
Chicago IL 60640-2427



COPY

Account Number Ending In: 8715
YOUR DISCOVER CARD PRIVILEGES ARE SUSPENDED

Dear Robert J Larson,

Pursuant to the terms of the Cardmember Agreement, and due to the
continued delinquency of your Account, we have elected to suspend your
charging privileges until further notice. Any attempt to use your
Discover Card will be automatically declined. For your own protection,
please place your cards in a safe place until this matter is resolved.

Most important, even if you cannot pay us right now, please call us at
1-800-347-7764 so we can help you resolve this matter in a way that will
be fair and satisfactory to everyone.

Sincerely,

Daniel Roland
DFS Services LLC

P.S. Call Toll-Free: 1-800-347-7764. All our representatives are
trained to help you. Office hours: Monday - Friday 8:00 am to 11:00 pm,
and Saturday 8:00 am to 4:30 pm EST.

If you have any questions regarding this letter, you should contact
Discover Bank, issuer of the Discover Card, at P.O. Box 15410,
Wilmington, DE 19850-5410.

60

071008    Page 1 of 2

EEOC Form 161-B (3/98)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | Robert J. Larson<br>915 Hinman Avenue<br>Evanston, IL 60202 | From: | Chicago District Office<br>500 West Madison St<br>Suite 2800<br>Chicago, IL 60661 |
|---|---|---|---|

**CERTIFIED MAIL NO.:** 7001 0320 0005 9832 5362

☐ On behalf of person(s) aggrieved whose identity is
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 440-2007-03177 | **Sarronda Harris,**<br>**Investigator** | **(312) 886-9320** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

[X] More than 180 days have passed since the filing of this charge.

[ ] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[X] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court <u>WITHIN 90 DAYS</u>** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*John P. Rowe*

Enclosures(s)

**John P. Rowe,**
**District Director**

10/18/07
*(Date Mailed)*

cc:        **PEAK6 INVESTMENTS LP**

(61)

# BLITT AND GAINES, P.C.
*Attorneys at Law*

---

661 Glenn Avenue * Wheeling *Illinois 60090 * 847 403-4900 * FAX 312 920-0625

October 22, 2007

Robert Larson
5334 North Kenmore Avenue Apt. # 1N
Chicago, Illinois 60640

Re: American Express Centurion Bank
Balance Due: $58,866.25
Our File Number: ▉▉▉▉▉▉
Client Number: 3▉▉▉▉▉▉▉▉▉

Dear Mr. Larson:

Please be advised that we have been retained by **American Express Centurion Bank** to collect their account in the amount above stated.

Please give this matter your prompt attention and direct full payment in the form of a certified check, cashier's check, or money order to the above address. If you wish to discuss an amicable payment arrangement, please contact us at the above phone number.

Unless you dispute the validity of this debt or any part of it within thirty (30) days from the date of receipt of this letter, we will assume the debt is valid. If in that time you advise us of a dispute we will obtain verification and mail it to you.

If you request of us in writing within thirty (30) days from the date of receipt of this letter, we will provide you with the name and address of the original creditor, if different from the current creditor.

This communication is from a debt collector and this is an attempt to collect a debt and any information obtained will be used for that purpose.

Very truly yours,

BLITT AND GAINES, P.C.

(62)

# ILLINOIS DEPARTMENT OF
# ◖Human Rights

Rod R. Blagojevich, Governor
Rocco J. Claps, Director

October 22, 2007

Complainant

Robert J. Larson
5334 N. Kenmore Avenue, Apt. #1N
Chicago, IL 60640

Respondent

Daniel Rosenthal, President/Co-CEO
Nancy McKinney, Director of Human Resources
Arthur John Hass III, Co-CEO
C/o Whitnie Gladden, Attorney
Franczek Sullivan P.C.
300 S. Wacker Drive, Suite 3400
Chicago, IL 60606

Charge Number: 2007CN3582
Complainant: Robert J. Larson
Respondent: Peak6 Investments LLP

## NOTICE OF FACT FINDING CONFERENCE

The persons named above are hereby required to appear and participate in a Fact-Finding Conference scheduled for **November 20, 2007** at **9:00 a.m.** to be held at <u>Department of Human Rights, 100 West Randolph Street, 10th Floor, Chicago, IL 60601</u>. Said conference will be conducted by the Department representative whose name and telephone number appear at the bottom of this notice.

The Fact-Finding Conference is an investigative forum intended to define the issues, determine which facts are undisputed, obtain evidence and ascertain whether there is a basis for a negotiated settlement of the charge. An attorney or other representative (or a friend or relative) may accompany you to the conference. However, you may not send a substitute for yourself. If you bring persons whose presence has not been requested without first receiving express permission to do so from the Department representative, those persons will be heard only at the discretion of the Department representative.

**RESPONDENT'S FAILURE TO ATTEND THE FACT FINDING CONFERENCE AS SCHEDULED MAY SUBJECT THE RESPONDENT TO <u>DEFAULT</u>. RESPONDENTS WHO APPEAR AT THE CONFERENCE EXCLUSIVELY THROUGH AN ATTORNEY OR OTHER REPRESENTATIVE UNFAMILIAR WITH THE EVENTS AT ISSUE SHALL BE DEEMED TO HAVE FAILED TO ATTEND AND MAY SUBJECT THE RESPONDENT TO <u>DEFAULT</u>.** If Respondent's representatives who are named in the fact finding notice no longer work for Respondent, or are not available, please contact the investigator immediately.



Charge No.: 2007CN3582
Notice of Fact Finding Conference
Page 2

**COMPLAINANT'S FAILURE TO ATTEND THE CONFERENCE MAY RESULT IN <u>DISMISSAL</u> OF THE CHARGE.**

If a Questionnaire or Request for Further Information is enclosed with this notice, you are requested to complete and return it to the Department representative by <u>N/A</u>. You may submit complete written statement of your position including a proposal for settlement. Any evidence or statements you provide will be made a part of the file and will be considered by the Department in its investigation, but settlement discussions will not be used as evidence without the written consent of the parties.

<u>You must provide all relevant evidence which is available to you, and you must tell the Department representative named below of any other material or witnesses you deem relevant at your earliest opportunity, but no later than at the fact finding conference on the date indicated above.</u>

**RESPONDENT'S FAILURE TO SUBMIT RELEVANT EVIDENCE MAY BE CONSTRUED AGAINST RESPONDENT AND RESULT IN A FINDING OF SUBSTANTIAL EVIDENCE.**

**COMPLAINANT'S FAILURE TO SUBMIT RELEVANT EVIDENCE AND INFORMATION MAY RESULT IN A FINDING OF LACK OF SUBSTANTIAL EVIDENCE OR DISMISSAL OF THE CHARGE FOR FAILURE TO COOPERATE.**

The Department strongly encourages the settlement of charges prior to or during the Fact Finding Conference. If you would like to discuss the possibility of a settlement, please contact the investigator named below.

Persons with disabilities who need accommodation to participate in Department of Human Rights programs should request such help from the Americans with Disabilities Act Coordinator, by calling (312) 814-2412, (312) 263-1579 (TDD) or writing to her at 100 West Randolph, Suite 10-100, Chicago, Illinois 60601.

**Please Note: Building security procedures require that any person requesting access to the offices at 100 West Randolph present proper photo identification.**

Melonie Morgan-Tyler
INVESTIGATOR


312-814-6212
TELEPHONE


**MMT/dmw**

FF1CPR/CPFORMS
rev. 10/02

## ILLINOIS DEPARTMENT OF HUMAN RIGHTS

### FACT-FINDING CONFERENCE EXPLANATION OF PROCEDURE

1.  Ordinarily, all documents or other non-testimonial evidence submitted by each party in support of its position shall be submitted to the investigator <u>before</u> the fact-finding conference.  In order to help narrow the issues and explore the possibility of settlement, the evidence will usually be discussed with the other parties, either before or at the fact-finding conference.  If the fact-finding conference does not result in settlement or withdrawal of the charge, the investigator will determine what further investigation, if any, will be conducted before preparing the investigative report.

2.  Each party may be accompanied by an attorney or other representative.  A party who attends a conference <u>only</u> by attorney will be considered as having failed to attend and may be subject to default proceedings.  Attorneys may advise their clients and offer input but they will <u>not</u> be permitted to answer factual questions for the parties or witnesses.

3.  The investigator conducts the conference and determines what persons shall be present and who will be questioned.  The parties should bring only those persons requested by the investigator, unless they have received the investigator's approval to bring other people.  The parties may not submit affidavits instead of bringing the persons requested by the investigator unless the investigator agrees that there is good reason for the person not being present.  All questions are asked by the investigator.  A question that a party wants asked should be addressed to the investigator who will decide whether to ask it.

4.  The investigator opens the conference by reading the fact-finding conference opening statement.  The investigator reviews conference procedures.  All persons attending the conference complete the sign-in sheet and the attorneys file appearances, if not previously filed.  The charge is read by the investigator. Amendments to the charge should usually be made in advance of the fact-finding conference in order to allow the Respondent to file an amended response. However,if at the fact-finding conference, amendment is requested by Complainant and is deemed appropriate by the investigator,changes will be made on the charge form, initialed and dated by Complainant, with copies given to all parties.

5.  An investigator will take notes during the fact finding conference, except for settlement discussions.  These will be maintained in the Department's investigation file.

FF1B/CPFORMS
10/1/93

STATE OF ILLINOIS
DEPARTMENT OF HUMAN RIGHTS

IN THE MATTER OF:                          )
                                           )
ROBERT LARSON,                             )         CHARGE NO.  2007CN3582
                                           )
                    COMPLAINANT,           )
                                           )
AND                                        )
                                           )
PEAK6 INVESTMENTS, LLP,                    )
                                           )
                    RESPONDENT.            )


## ORDER OF CLOSURE

Charge Number 2007CN3582 having been filed with the Department of Human Rights

by Complainant against Respondent, and Complainant having submitted a written

request to withdraw the charge pursuant to the Department's Rules and Regulations;


NOW, THEREFORE, it is hereby ORDERED that Complainant's request to withdraw is

approved and that Complainant's charge(s) be and the same is (are) closed.


ENTERED THIS 4TH DAY OF DECEMBER, 2007.

                         DEPARTMENT OF HUMAN RIGHTS

            BY:  _____
                         Brent A. Harzman,  Manager
                         Charge Processing Division


(64)

STATE OF ILLINOIS    )
                    ) ss

COUNTY OF COOK    )                 FILE NO(S) <u>2007CN3582</u>

## **AFFIDAVIT OF SERVICE**

    William T. Smythe, being first duly sworn, on oath states that he served a copy of

the attached <u>ORDER OF CLOSURE</u> on each person named below by depositing same

this 4th day of December, 2007, in the U.S. Mail Box at 100 West Randolph Street,

Chicago, Illinois 60601, properly posted for FIRST CLASS U.S. MAIL, addressed as

follows:

---

Mr. Robert J. Larson
5334 North Kenmore Avenue  #1-N
Chicago,  IL  60640

Ms. Sally Scott, Esq.
Franczek Sullivan, P.C.
Attorneys at Law
300 South Wacker Drive,  Suite 3400
Chicago,  IL  60606

_William Smythe_
William T. Smythe

SUBSCRIBED and SWORN to before
me this 4th day of December, 2007.

_Gloria J. Polk_
NOTARY PUBLIC

"OFFICIAL SEAL"
GLORIA J. POLK
Notary Public, State of Illinois
My Commission Expires 02/15/2010